IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Lee Beaudoin, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No.: 1:17−cv−02569−CCB |
| | * | |
| Accelerated Logistics, LLC, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR SANCTIONS FOR THE SPOLIATION OF EVIDENCE**

Plaintiff Lee Beaudoin ("***Ms. Beaudoin***") submits this Memorandum of Law in support of her Motion for Sanctions for the Spoliation of Evidence (the "***Motion***") against Accelerated Logistics, LLC and Accelerated Services, LLC (the "***Accelerated Defendants***") and states as follows:

**INTRODUCTION**

This case arises out of a hit-and-run collision in which a tractor-trailer loaded with nine SUVs backed up without warning and crushed Ms. Beaudoin's car at the peak of rush hour at a Royal Farms gas station. That tractor trailer was being driven by Leonard Moore ("***Mr. Moore***"). Ms. Beaudoin has brought claims of negligence as well as assault and battery. The Accelerated Defendants concede liability for negligence, but dispute that Mr. Moore's actions were intentional. Discovery has closed and the evidence confirms that these Defendants have never taken this hit-and-run collision seriously. They never investigated what happened and waffled on taking responsibility for what happened to Ms. Beaudoin. The Accelerated Defendants' destruction of evidence is therefore perfectly consistent with this pattern of conduct.

Ms. Beaudoin seeks an adverse inference jury instruction, as well as attorneys' fees and costs, as the appropriate sanction for Defendants' destruction of driver logbooks. The driver logs

are critical to this case because Mr. Moore, to this very day, refuses to take responsibility for crushing Ms. Beaudoin's vehicle. In taking this incredible position, Mr. Moore relies on the driver logs to explain what he was doing before, during, and after the hit-and-run, and otherwise recalls very little about a hit-and-run that occurred just over a year ago. Ms. Beaudoin, on the other hand, has been significantly prejudiced in her preparation and prosecution of this case because the Accelerated Defendants destroyed the logs after the Accelerated Defendants were unquestionably on notice to preserve relevant information. Indeed, it appears that these logs were likely destroyed about ***a week after Ms. Beaudoin initiated this litigation.***

In order to remedy the substantial prejudice resulting from the destruction of the driver logs, and in line with federal case law where a commercial trucking defendant destroys driver log, Ms. Beaudoin seeks an adverse jury instruction and her attorneys' fees in preparing this spoliation motion and investigating the spoliation.

## SUMMARY OF RELEVANT FACTS

### I.    The Accelerated Defendants' Knowledge of this Lawsuit.

On February 9, 2017, a tractor-trailer owned and operated by the Accelerated Defendants and driven by Mr. Moore backed up without warning and crushed Ms. Beaudoin's car at Royal Farms gas station. After crushing Ms. Beaudoin's vehicle, Mr. Moore fled the scene of the collision. That same day, Officer Schmidt of the Baltimore City Police Department put the Accelerated Defendants on notice of the hit-and-run. On February 27, 2017, the undersigned counsel sent via facsimile an evidence preservation letter to the Accelerated Defendants (the "***Evidence Preservation Letter***", attached hereto as ***Exhibit 1***. The Evidence Preservation Letter provided:

> If you have not already done so as a result of being put on notice of the accident on February 9, 2017, this letter advises you, including your employees, representatives, and agents, that it is your legal duty to preserve, and not to destroy,

alter, delete, or relinquish control over to any third party, (a) the tractor-trailer involved in the Accident, (b) any other components or attachments to the tractor-trailer involved in the accident, and (c) any and all originals, copies, and/or versions (whether in hard copy, native, recorded, reproduced or electronic form) of any and all documents or electronically-stored information ("ESI") concerning or relating to the Accident.

The Evidence Preservation Letter further warned that the Accelerated Defendants' "failure to strictly comply with these demands has serious legal consequences and will result in further legal action by Ms. Beaudoin to protect her rights to the fullest extent under federal and/or Maryland or other state law." *Id.* The Evidence Preservation Letter was successfully transmitted to the Accelerated Defendants at 18:43:14 (GMT) on February 27, 2017. *See* Transmittal Email, attached hereto as ***Exhibit 2***. The Accelerated Defendants claim to have possibly never received the Letter even though it was sent to the correct fax number.

On March 13, 2017, the Accelerated Defendants' insurer, Nationwide, acknowledged receipt of the Evidence Preservation Letter and the undersigned counsel's representation of Ms. Beaudoin. *See* March 13, 2017 Fax from Chad Carter, Nationwide, attached hereto as ***Exhibit 3.*** Undersigned counsel and Ms. Beaudoin then exchanged email correspondence regarding the hit-and-run in June, July, and August 2017, which ultimately resulted in Nationwide admitting to liability for the collision, yet refusing to compensate Ms. Beaudoin for her bodily injury claims including claims for pre-impact fright and fear of imminent injury or death.

## II. The Accelerated Defendants' Destruction of the Driver Logs.

In addition to Ms. Beaudoin's document requests, which covered the driver logs in question,[1] undersigned counsel, during the deposition of Mr. Moore on April 17, 2017, specifically requested the driver logs. The following colloquy arose with regard to the driver logs:

---

[1] The driver logs are responsive to Document Request Nos. 6, 11, 14, 15, 16, 18, 19, 21, 22, 25, attached hereto as ***Exhibit 4.***

3

[COUNSEL FOR MS. BEAUDOIN]: So every -- every start and stop you're noting it in your logbook?

[MR. MOORE]: Yes.

[COUNSEL FOR MS. BEAUDOIN]: Did you have a logbook in connection with this -- this accident?

[MR. MOORE]: Yes. We all -- we have to abide by a logbook.

[COUNSEL FOR MS. BEAUDOIN] Okay. Did you ever turn that logbook over to Accelerated?

[MR. MOORE]: Yeah. We have to turn these in to every company.

[COUNSEL FOR MS. BEAUDOIN]: Okay. We'd like -- we'd like that logbook, by the way. I don't think we've -- we've received that.

[COUNSEL FOR THE ACCELERATED DEFENDANTS]: I don't remember if it was requested. I don't know how long they retain them, but if they retained them and we have it, then we'll provide it.

[COUNSEL FOR MS. BEAUDOIN]: Okay. I would be surprised if they didn't retain it, but --

[COUNSEL FOR THE ACCELERATED DEFENDANTS]: I have no idea.

[COUNSEL FOR MS. BEAUDOIN]: Especially because the -- Do you recall when you provided your logbook to Accelerated?

[MR. MOORE]: Weekly.

[COUNSEL FOR MS. BEAUDOIN]: Do you recall how soon after the accident you provided them this logbook?

[MR. MOORE]: I just give them to every company weekly.

**[COUNSEL FOR MS. BEAUDOIN]: Yeah, because, I mean, that would be spoliation because they were on notice of an accident the day of, so hopefully they don't --**

**[COUNSEL FOR THE ACCELERATED DEFENDANTS]: I don't know that it's been requested –**

**[COUNSEL FOR MS. BEAUDOIN]: I think it's --**

4

> **[COUNSEL FOR THE ACCELERATED DEFENDANTS]:** -- so if -- I would – I would be surprised if they didn't have it, put it that way.
>
> [COUNSEL FOR MS. BEAUDOIN]: Okay. I mean --
>
> [COUNSEL FOR THE ACCELERATED DEFENDANTS]: I know that we will -
>
> [COUNSEL FOR MS. BEAUDOIN]: -- we may not have specifically requested a logbook, but I am almost positive it would have been within the scope of our request, but we'll go back and check.
>
> [COUNSEL FOR THE ACCELERATED DEFENDANTS]: We'll take a look.
>
> [COUNSEL FOR MS. BEAUDOIN]: Okay.
>
> **[COUNSEL FOR THE ACCELERATED DEFENDANTS]: If we have it, we'll provide it.**

Moore Dep. 54:16-56:14 (emphasis added), attached hereto as ***Exhibit 5***. Mr. Moore referenced the logbooks throughout his deposition. *Id.; see also id.* at 79:14-82:19, 84:22-88:2, 90:13-17, 99:22-101:3, 121:22-122:6. Mr. Moore believes that he turned the logbook in to the Accelerated Defendants upon arriving to the Accelerated Defendants principal place of business in Colorado, which was likely in early March 2017. *See id.* at 128:5-11.

    The day after Mr. Moore's deposition, counsel for Ms. Beaudoin followed up via email and once again requested the driver logs. Then, on April 24, 2018, during a meet-and-confer, counsel for Ms. Beaudoin again asked about the status of Mr. Moore's logs. Counsel for the Accelerated Defendants responded that the logs no longer exist. At the deposition of the Accelerated Defendants' corporate designee, on May 7, 2018,[2] the Accelerated Defendants confirmed that the logs were destroyed, likely six months after the logs were provided to the

---

[2] Ms. Beaudoin has not yet been provided with the transcript from this deposition.

5

Accelerated Defendants, which would have been the first week of September 2017—days after Defendants were served with this lawsuit.[3]

## ARGUMENT

As set forth in detail below, Ms. Beaudoin is entitled to an adverse jury instruction and her attorneys' fees in preparing this motion and investigating the spoliation because the Accelerated Defendants (1) had an obligation to preserve the driver logbooks and (2) acted willfully in their destruction of the driver logbooks. The evidence that was destroyed is highly relevant to Ms. Beaudoin's claims.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). As explained by this Court,

> [T]he evidentiary spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence. The spoliation doctrine authorizes a court to order dismissal, to grant summary judgment, or permit an adverse inference to be drawn against a party, as means to level the evidentiary playing field and for the purpose of sanctioning improper conduct.

*Ellicott Mach. Corp. Int'l v. Jesco Constr. Corp.*, 199 F. Supp. 2d 290, 293 (D. Md. 2002) (quoting *Hartford Ins. Co. v. American Automatic Sprinkler Sys., Inc.*, 23 F. Supp. 2d 623, 626 (D. Md. 1998) (citations and quotations omitted). Federal courts have the inherent power to impose sanctions for spoliation. *See Silvestri*, 271 F.3d at 590 ("The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence

---

[3] While Accelerated Defendants' have advised that they have produced everything in their possession related to the hit-and-run, Ms. Beaudoin has not been provided with any recorded statements, notes and/or documents from the Accelerated Defendants' investigation of the hit-and-run, or any internal emails or other correspondence between the Accelerated Defendants related to the hit-and-run. According to the Accelerated Defendants, these documents do not exist.

that the process works to uncover the truth."); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 517 (D. Md. 2010) (stating that one of the two main sources to levy sanctions on a spoliator derives from the "court's inherent power to control the judicial process and litigation, a power that is necessary to redress conduct 'which abuses the judicial process." (citations omitted)); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

To prove sanctionable spoliation, a party must establish:

(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered;

(2) the destruction or loss was accompanied by a "culpable state of mind;" and

(3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*Victor Stanley*, 269 F.R.D. at 520-21 (citations omitted). As discussed in turn below, these criteria are satisfied.

### I. The Accelerated Defendants' Had a Duty to Preserve the Driver Logs.

A party has a duty to preserve evidence when the party is placed on notice that the evidence is relevant to litigation or when the party should have known that the evidence may be relevant to future litigation. *See Silvestri*, 271 F.3d at 590. A duty to preserve arises not only after litigation has been commenced, but "also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009). And, "[o]nce a party reasonably anticipates litigation, it is obligated to suspend its routine document retention/destruction policy and implement a 'litigation hold' to ensure the preservation of relevant documents." *Id.* at 511. Specifically, a party is obligated to preserve:

7

> [A]ny documents or tangible things (as defined by [Fed. R. Civ. P. 34(a))] made by individuals "likely to have discoverable information that the disclosing party may use to support its claims or defenses." The duty also includes documents prepared for those individuals, to the extent those documents can be readily identified (e.g., from the "to" field in e-mails). The duty also extends to information that is relevant to the claims or defenses of any party, or which is "relevant to the subject matter involved in the action." Thus, the duty to preserve extends to those employees likely to have relevant information—the "key players" in the case.

*Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 5158732, at *2 (D. Md. Aug. 31, 2015); *see also Victor Stanley*, 269 F.R.D. at 525- 26 (D.Md. 2010) ("[T]he duty to preserve evidence relevant to litigation of a claim is a duty owed to the court, not to a party's adversary . . . [P]roduction and preservation are not synonymous[;] production [to another party] is possible only if documents are preserved." (citations omitted)).

Here, the Accelerated Defendants had a duty to preserve the documents on the day of the hit-and-run because the Accelerated Defendants were put on notice of the hit-and-run that same day by Officer Schmidt of the Baltimore City Police Department.  Further, counsel for Ms. Beaudoin sent a document preservation notice on February 27, 2018, which would have unquestionably triggered a duty to preserve all documentation related to the hit-and-run.  *See Terrell v. Cent. Washington Asphalt, Inc.*, No. 211CV00142APGVCF, 2016 WL 973046, at *3 (D. Nev. Mar. 7, 2016) (stating that there was "no question that [the defendant] was on notice that the logbooks for the drivers for the date of the accident were relevant to anticipated litigation[]" where plaintiffs' counsel sent a representation letter to the trucking company defendants).[4]

---

[4] The Accelerated Defendants corporate designee, in trying to provide an excuse for their destruction of logbooks, testified that the Evidence Preservation Letter was sent to the company's busiest fax machine and, as such, the Accelerated Defendants may not have received it.  This contention is disturbing.  <u>First</u>, the fax number is used in all aspects of the Accelerated Defendants' business.  <u>Second</u>, Nationwide confirmed that the Accelerated Defendants were in receipt and possession of the Evidence Preservation Letter.

8

In addition, counsel from Ms. Beaudoin was in constant contact with Nationwide in June, July, and August leading to the filing of this instant suit further implicating their duty to preserve documents. Nonetheless, the Accelerated Defendants destroyed the logs very shortly after Ms. Beaudoin filed her complaint.[5]

## II.     The Accelerated Defendants' Willful Destruction of the Driver Logs.

In resolving a spoliation motion, the court must determine whether the Accelerated Defendants acted with a culpable state of mind. *Victor Stanley*, 269 F.R.D. at 529. "[A]ny fault—be it bad faith, willfulness, gross negligence, or ordinary negligence—is a sufficiently culpable mindset." *Id.* (citations omitted). Willfulness is the equivalent to "intentional, purposeful, or deliberate conduct." *Id.* at 530. "Willfulness does not require bad faith, but can instead be demonstrated by intentional or deliberate conduct resulting in spoliation." *Genuine Dubmax, Inc. v. Greektown LLC,* 2012 WL 1664067 at *4 (D. Md. May 10, 2012) (citations omitted); *see also Victor Stanley*, 269 F.R.D. at 530 ("Conduct that is in bad faith must be willful, but conduct that is willful need not rise to bad faith actions.")

The Accelerated Defendants acted willfully in their destruction of the driver logs. As discussed above, starting on the day of the hit-and-run, the Accelerated Defendants were aware that litigation was contemplated against them for the hit-and-run, and the driver logs, which indicate what Mr. Moore was doing before, during, and after the hit-and-run, would be relevant to the litigation. In direct contravention of their duty to preserve and suspend their document retention policies (*i.e.*, destroying the driver logs every six months), the Accelerated Defendants

---

[5] Federal regulations mandate that driver logbooks be kept for a period of six months from the date of receipt. 49 C.F.R. § 395.8(k)(1) ("A motor carrier shall retain records of duty status and supporting documents required under this part for each of its drivers for a period of not less than 6 months from the date of receipt.").

9

willfully destroyed the relevant driver logs. In other words, the Accelerated Defendants knew that the driver logs were relevant to the litigation before they destroyed them. Additionally, the "timing of Defendants' spoliation is telling" because it occurred within days after the Accelerated Defendants were served with the complaint and discovery requests. *See Victor Stanley*, 269 F.R.D. at 531.

### III. The Driver Logs are Relevant to Ms. Beaudoin's Claims and their Absence is Highly Prejudicial.

In fashioning the appropriate sanction, "the Court must also consider the relevance of the lost evidence and the resulting prejudice." *First Mariner Bank v. Resolution Law Grp., P.C.*, No. CIV. MJG-12-1133, 2014 WL 1652550, at *12 (D. Md. Apr. 22, 2014). "[E]vidence is relevant if a reasonable trier of fact could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Id.* (citations omitted). Where a party's ability to present its case is compromised, prejudice is typically found. *Victor Stanley,* 269 F.R.D. at 532. Additionally, courts in this District recognize that "[w]hen the party alleging spoliation shows that the other party acted willfully in failing to preserve evidence, the relevance of that evidence is presumed." *See, e.g.*, *id.*; *First Mariner Bank*, 2014 WL 1652550, at *12.

Because the Accelerated Defendants willfully destroyed the driver logs, they are presumed to be relevant. In any event, the logbooks are relevant because they would indicate exactly what Mr. Moore was doing before, during, and after the hit-and-run. *See Terrell*, 2016 WL 973046, at *3 (concluding that the "drivers' activities leading up to and following the accident plainly would be relevant" and ordering adverse jury instruction based on the destruction of the logbooks). Indeed, the driver logs would reveal information such as whether Mr. Moore got enough sleep, was in a rush, or otherwise knew that he had been involved in a hit-and-run. *See* 49 CFR § 395.8(d). This evidence is especially important here because the driver had a history of violations, which

was known to the Accelerated Defendants when he was hired.  *See* Federal Motor Carrier Safety Administration, PSP Detailed Report (ACC00017-18), attached hereto as **Exhibit 6**; Ex. 5, Moore Dep. 51:13-58:18.

Moreover, as evident from his deposition, Mr. Moore remembers very little about the hit-and-run, and relies on his logbooks to explain what occurred.  *See id.* at 54:16-56:14; 79:14-82:19, 84:22-88:2, 90:13-17, 99:22-101:3, 121:22-122:6.  Because those logbooks were destroyed, Ms. Beaudoin cannot fully and fairly cross-examine Mr. Moore about the circumstances of the hit-and-run because he simply refers to his logbooks in discussing critical details what he was doing before and after the hit-and-run.  And credibility is a key issue in this case, especially in connection with Ms. Beaudoin's claims of assault and battery, which the Defendants and Mr. Moore deny.

### IV. The Appropriate Sanction is an Adverse Jury Instruction and Attorneys' Fees.

This Court has broad discretion to fashion an appropriate sanction to remedy the Accelerated Defendants' spoliation of the driver logbooks.  *Silvestri*, 271 F.3d at 590 (4th Cir. 2001).  In exercising this discretion, "the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  *Id.* (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  In addition to deterring further spoliation, the appropriate remedy should "restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."  *West*, 167 F.3d at 779 (internal quotations omitted); *see also Broccoli*, 229 F.R.D. at 510. ("A court has discretion to impose sanctions for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct." (citations omitted)).

The less drastic sanction of an adverse jury instruction is appropriate for the Accelerated Defendants' willful destruction of the driver logs.  *See Charter Oak Fire Ins. Co. v. Marlow*

*Liquors, LLC*, 908 F. Supp. 2d 673, 685 (D. Md. 2012); *see also Fairview Ritz Corp. v. Borough of Fairview*, No. CIV.A. 09-0875 JLL, 2013 WL 163286, at *8 (D.N.J. Jan. 15, 2013) ("An adverse inference is generally considered one of the lesser punishments a court can give."). Such jury inference should include the following instruction:

> **The Accelerated Defendants have destroyed and failed to produce Mr. Moore's driver logbooks, which is some evidence that the information not produced, if brought, would have exposed facts unfavorable to the Accelerated Defendants.**

*See Goodman*, 632 F. Supp. 2d at 523 ("The failure to preserve Marty's laptop and her emails, which was the result of willful conduct, permits 'an inference that Tracer/PSI and Marty fear to produce the evidence,' which 'is some evidence that the information not produced, if brought, would have exposed facts unfavorable to Tracer/PSI and Marty." (internal alteration and quotation marks omitted)).

Ms. Beaudoin also requests her attorneys' fees and costs incurred in preparing this Motion and investigating the spoliation. *See, e.g., Simone v. VSL Pharm., Inc.*, No. CV TDC-15-1356, 2018 WL 1365848, at *8 (D. Md. Mar. 16, 2018) ("VSL has likely incurred significant costs, mostly in the way of attorney's fees, for investigating De Simone's spoliation and presenting it to the Court in the Motion for Sanctions. Had De Simone not destroyed some of the documents he received from Hyman Phelps, VSL would not have had to incur such costs. Fairness dictates that De Simone shoulder these costs, not VSL."). Moreover, because the Accelerated Defendants are a large national trucking company ($40-50 million in annual revenues) that own almost 200 tractor-trailers and have ample financial resources and means for having sufficient document retention policies in place, such an award is appropriate. *Broccoli*, 229 F.R.D. at 510 (D. Md. 2005) ("Given Echostar's status as a large public corporation with ample financial resources and personnel management know-how, the court finds it indefensible that such basic personnel

procedures and related documentation were lacking . . . Echostar clearly acted in bad faith in its failure to suspend its email and data destruction policy or preserve essential personnel documents in order to fulfill its duty to preserve the relevant documentation for purposes of potential litigation. These bad faith actions prejudiced Broccoli in his attempts to litigate his claims and measurably increased the costs for him to do so.").[6]

Accordingly, Ms. Beaudoin's request for an adverse jury instruction and her attorneys' fees incurred in preparing this motion and investigating the spoliation is appropriate for the resulting prejudice to Ms. Beaudoin in prosecuting her case, and is in line with the sanctions imposed by federal courts, including district courts within the Fourth Circuit, for the destruction of driver logbooks. *Leary v. Delarasa*, Case No. 5:16-cv-43, 2017 U.S. Dist. LEXIS 208112, at *1 (W.D. Va. July 24, 2017) (ordering "spoliation instruction to the jury regarding defendants' loss or destruction of the driver's log[.]"); *O'Berry v. Turner*, No. 7:15-CV-00064-HL, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016) (adverse jury instruction that the jury must presume the lost driver log was unfavorable to the defendant was appropriate where plaintiff faxed a spoliation letter to the defendant); *Terrell*, 2016 WL 973046, at *4 (instructing the "jury that CWA lost or destroyed the logbooks from the day of the accident, as well as pre-accident logbooks and hours-of-service records, at a time when it knew or should have known those documents were relevant to anticipated litigation [and] that CWA's conduct creates a rebuttable presumption that if these documents had been produced, they would show information favorable to the plaintiffs and unfavorable to CWA."); *Ogin v. Muhiddin*, 563 F. Supp.2d 539, 543-544 (M.D. Pa. 2008) (adverse

---

[6] Should this Motion be granted, Plaintiffs will provide this Court with a memorandum detailing the fees requested in accordance with Local Rule 109.2(b).

13

inference instruction was the "least severe and most appropriate sanction" warranted by the trucking company's destruction of driver's logs because it was on notice soon after accident that suit would be filed and driver's logs would be sought by the plaintiffs); *see also H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, No. 12-CV-531-GKF-PJC, 2015 WL 1954462, at *8-11 (N.D. Okla. Apr. 29, 2015) (granting attorneys' fees and costs of $69,240.84 based on discovery violations which included, in part, the discarding of driver log books and noting that the prejudice to the moving party prevented it from prosecuting its claims)

## CONCLUSION

For the foregoing reasons, Ms. Beaudoin's Motion for Sanctions for the Spoliation of Evidence should be granted.

[SIGNATURES ON THE FOLLOWING PAGE]

Dated: May 11, 2018

Respectfully submitted,

*/s/ Ugo Colella*
Ugo Colella (Bar No. 17443)
DUANE MORRIS LLP
505 9th Street N.W.,
Suite 1000
Washington, DC 20004-2166
ucolella@duanemorris.com
mcbrook@duanemorris.com
(202) 776-5219
(202) 315-3423 facsimile


Michael C. Brook (Bar No. 19868)
DUANE MORRIS LLP
111 South Calvert Street
Suite 2000
Baltimore, Maryland 21202-6114
mcbrook@duanemorris.com
(410) 949-2949
(410) 949-2953 facsimile

*Counsel for Lee Beaudoin*

15

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and exact copy of the foregoing was filed electronically via the Court's CM/ECF system on this 11th day of May, 2018 and served on all counsel of record via same.

*/s/ Ugo Colella*_____
Ugo Colella