IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Lee Beaudoin, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Case No.: 1:17−cv−02569−CCB |
| | * |
| Accelerated Logistics, LLC, et al., | * |
| | * |
| Defendants. | * |
| | * |

**PLAINTIFF LEE BEAUDOIN'S OPPOSITION TO**
**DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT**

Plaintiff Lee Beaudoin ("***Ms. Beaudoin***") submits this Opposition to the Partial Motion for Summary Judgment filed by the Defendants Accelerated Services, LLC and Accelerated Logistics, LLC (the "***Defendants***") (ECF No. 24).

## INTRODUCTION

Ms. Beaudoin deserves her day in court and an opportunity to present her intentional tort claims to a jury of her peers, who should decide what really happened on February 9, 2017. In attempting to prevent Ms. Beaudoin from presenting her side of the story, the Defendants paint this case as an ordinary motor vehicle accident based on the testimony of the driver of the tractor-trailer, Leonard Moore ("***Mr. Moore***"), that "he did not know he was in an accident, and had he known he would not have left the scene." (ECF No. 24-1, at 3). In doing so, the Defendants essentially ask this Court to endorse Mr. Moore's version of the events and find that Mr. Moore is entirely credible, while disregarding Ms. Beaudoin's version of what happened, which has been entirely consistent and, as set forth in detail below, supported by the evidence.

As confirmed by the statements made by the arriving officer, upon review of a video of the hit-and-run and the significant damage to Ms. Beaudoin's vehicle, this was no ordinary accident.

It was a hit-and-run[1] which resulted in the arriving officer remarking, "I am very dumbfounded right now. I've never seen something this serious where the guy just left and I've been a cop almost 10 years." Beaudoin – Baltimore City Police Body Camera Footage, at 10:46-55, attached hereto as ***Exhibit A-1***. Contrary to the Defendants' mischaracterization of the evidence and Ms. Beaudoin's testimony, taking the facts in a light most favorable to Ms. Beaudoin, a reasonable jury could easily find that Mr. Moore was fully aware that Ms. Beaudoin was behind him when he struck her vehicle. Moreover, a reasonable jury could just as easily find that once Mr. Moore made initial contact with Ms. Beaudoin's vehicle and straightened out his cab, he continued to crush Ms. Beaudoin's vehicle, dragging it back for four car lengths, with full knowledge that Ms. Beaudoin was behind him and trying to get his attention.

As set forth below, summary judgment is inappropriate here because a genuine factual dispute exists between Mr. Moore's recollection of the facts and Ms. Beaudoin's version of events, which is and has always been that Mr. Moore was aware that she was behind him when he crushed her car. *See* Aff. of Lee Beaudoin ¶¶ 1-3, attached hereto as ***Exhibit B***. Indeed, Ms. Beaudoin, during her deposition, testified that she was furiously waving at Mr. Moore to get his attention, adding further support to her belief that he could see her. Beaudoin Dep. 46:22-25, attached hereto as ***Exhibit C.*** At the same time, Ms. Beaudoin, along with another motorist, were also furiously honking their car horns. *Id.* at 43:1-10, 44:4-8, 46:8-47:11; Bittner Dep. 16:3-5, 29:13-20, attached hereto as ***Exhibit D***. Her recollection has been entirely consistent as she: (1) made identical remarks almost immediately after the hit-and-run to Officer Schmidt, while she was in the heat of the moment and under the stress of the hit-and-run, Ex. A-1, at 01:00-04 ("I could see his full

---

[1] Upon arriving at the Royal Farms, Officer J. Schmidt fielded a call to another incident and replied that he would respond, "as soon as I clear up on this ***hit-and-run*** . . . ." Beaudoin – Baltimore City Police Body Camera Footage, at 03:51-55, attached hereto as ***Exhibit A-1***.

mirror on the right side. *I know he could see me*"); *Id.* at 01:38-41 ("So sure enough I'm laying on the horn . . .") and (2) told Russell Bittner ("**Mr. Bittner**"), an eyewitness to the hit-and-run who chased down the tractor-trailer after it fled on I-95, fifteen to twenty minutes after the hit-and-run that the "driver of the tractor-trailer knew that he hit her" and that "[h]e was looking right at me in the mirror." Ex. D, Bittner Dep. 21:5-12.

On the other hand, Mr. Moore curiously refuses to take responsibility for crushing Ms. Beaudoin's vehicle despite admitting being at the location of the hit-and-run at the relevant time and notwithstanding the fact that the Accelerated Defendants have conceded negligence in this case. Moore Dep. 131:19-134:11, attached hereto as ***Exhibit E***. He testified that he was checking his mirrors at all times and that, if his cab was angled to the left, as it was here, he could see a car behind him. *Id.* at 116:20-118:22, 131:11-20; Exhibit 3 to Moore Dep. He also testified that he could see a car approximately 10 feet behind him in his mirror, Ex. E, Moore Dep. 117:22-118:22, and Mr. Bittner testified that Ms. Beaudoin's vehicle was approximately 10 to 20 feet behind Mr. Moore. Ex. D, Bittner Dep. 15:1-5. In addition, for safety purposes, Mr. Moore testified that he keeps his window cracked so that he could hear his surroundings, and would pay particular attention to people honking. Ex. E, Moore Dep. 135:5-136:4, 142:16-143:14. Yet, he claims he did not see or hear Ms. Beaudoin's vehicle behind him when he smashed his tractor-trailer into her vehicle and then continued to back her car for four car lengths after initially making contact. *Id.* at 115:4-5. This dispute of material fact between Mr. Moore and Ms. Beaudoin's version of events with regard to whether Mr. Moore was aware (either through seeing or hearing) that Ms. Beaudoin's vehicle was behind him, in and of itself, is sufficient to withstand summary judgment.

But there's more. While Defendants rely on Mr. Bittner's testimony to support their claim that "Plaintiff cannot satisfy the requisite intent or her burden of proof" (ECF No. 24-1, at 7), they

omit a critical part of his transcript, where he testified that he clearly recalls hearing honking before Mr. Moore made contact with Ms. Beaudoin's vehicle. Ex. D, Bittner Dep. 29:8-19. According to Mr. Moore, his window was cracked so that he could hear what was going on, yet he somehow did not hear honking even though Mr. Bittner, who was positioned further away, testified he could hear honking. *See id.* Crucially, Mr. Bittner, who was three to four feet away from Mr. Moore, creates questions of fact as to whether Mr. Moore knew that Ms. Beaudoin was behind him when he hit Ms. Beaudoin. *Id.* at 18:1-10 ("I was surprised to see that he did not realize or – ***or maybe he did realize***"); *id.* at 21:9-14 ("I think she said she was --; "He was looking right at me in the mirror,"; something like that. I don't know if that's the case or not. I like to assume -- I don't want to assume, ***but I don't know if he knew it or not.***").

Of course, the Court cannot make credibility determinations at the summary judgment stage. At trial, Ms. Beaudoin will seek to discredit Mr. Moore's and the Defendants' version of what happened based on substantial evidence suggesting that Defendants and Mr. Moore have been untruthful. As a result, if a jury does not believe Defendants or Mr. Moore, that jury can reasonably conclude that Mr. Moore was aware that Ms. Beaudoin was behind him when he crushed her car and continued to do so for approximately eleven seconds and four car lengths. This is sufficient to create an issue of fact as to Mr. Moore's intent—for which credibility is central—to preclude summary judgment.

Lastly, and incorporating the arguments made in Ms. Beaudoin's Motion for Spoliation for the Destruction of Evidence and the Reply thereto (ECF Nos. 17 and 25), the Accelerated Defendants willfully destroyed driver logbooks—a critical piece of evidence in this case—thereby impeding Ms. Beaudoin's ability to develop her claims and fully cross-examine Mr. Moore. Now, they are seeking to benefit from this destruction in barring Ms. Beaudoin's ability to present her

intentional tort claims as well as her version of the facts to the jury. Keeping in mind that "intent is a subjective element usually left for the jury's determination," summary judgment is inappropriate here in light of the paramount importance of credibility in assessing subjective intent or state of mind. *See Alexia Burno-Whalen v. State of Maryland*, No. GJH-15-564, 2016 WL 1259556, at *4 (D. Md. Mar. 28, 2016). Similarly, because intent is also crucial for Ms. Beaudoin's claim for punitive damages, which are "normally for the jury to decide," summary judgment on this issue should also be denied. *See Desrosiers v. MAG Indus. Automation Sys., LLC*, No. CIV. WDQ-07-2253, 2010 WL 4116991, at *7 (D. Md. Oct. 19, 2010).

**I.     Statement of Undisputed and Disputed Material Facts.**

Ms. Beaudoin disputes a significant portion of the Defendants' facts in their Motion for Partial Summary Judgment. Moreover, the facts relied upon by the Defendants are significantly incomplete. Accordingly, Ms. Beaudoin summarizes the material disputed and undisputed facts below.

At approximately 7:00-7:30 a.m. on the morning of February 9, 2017, Ms. Beaudoin began her work commute from Phoenixville, Pennsylvania to Baltimore, Maryland. Ex. C, Beaudoin Dep at 37:8-23. At approximately 9:20 a.m., she stopped at a Royal Farms located at 1200 Ponca Street, Baltimore, Maryland 21224 to get gas. *Id.* at 37:8-23.

At approximately 9:35 a.m., Mr. Moore, driving Defendants' tractor-trailer carrying nine SUVs,[2] pulled out of the Royal Farms gas station over three lanes of traffic to make a left out of the gas station with the cab of the tractor-trailer facing to the left. Beaudoin – Royal Farms Video, at 9:35:35, attached hereto as ***Exhibit A-2***. Then, without activating any back up lights and without

---

[2] It is undisputed that Mr. Moore was acting within the scope of his employment with Defendants.

any beeping coming from the tractor-trailer, he began to back his tractor-trailer towards the direction of Ms. Beaudoin's vehicle, which was positioned approximately 10-20 feet behind him and slightly aligned to the right. *Id.* at 9:35:35; Ex. C, Beaudoin Dep. 42:17-21; Ex. D, Bittner Dep. 15:1-5; Exhibit 1 to Bittner Dep. Ms. Beaudoin's vehicle was not directly behind the tractor-trailer as the driver side of her vehicle was favoring the passenger side of the tractor-trailer. Ex. B, Aff. of Lee Beaudoin ¶ 2(c); *see also* Exhibit 1 to Bittner Dep.[3] Ms. Beaudoin was "laying on the horn" to get Mr. Moore's attention. Ex. C, Beaudoin Dep. 43:1-10, 44:4-8, 46:8-47:11; Ex. B, Aff. of Lee Beaudoin ¶ 2(a). Notwithstanding the honking, which was heard by another motorist (Mr. Bittner), who was further away from Ms. Beaudoin's vehicle than Mr. Moore, Mr. Moore continued to back up his tractor-trailer. Ex. D, Bittner Dep. 29:8-19. Ms. Beaudoin tried to put her car in reverse to avoid the impact but could not do so before the tractor-trailer struck the left driver's corner of Ms. Beaudoin's vehicle. Ex. C, Beaudoin Dep. 43:6-7.

For about eleven seconds after making initial contact with Ms. Beaudoin's vehicle, Mr. Moore continued to reverse the tractor-trailer. Ex. A-2, at 9:35:50-9:36:01. During this time, which according to Ms. Beaudoin sounded like a thousand Coke cans being crunched, Ms. Beaudoin lifted her feet off the brakes for fear that she would lose them. Ex. C, Beaudoin Dep. 44:13-45:4. Over these eleven seconds which pushed Ms. Beaudoin's vehicle back four-car lengths, the trailer came so close to the driver's side window that she could "actually put [her] hands on it" and the SUVs carried aboard the tractor-trailer bounced above her and appeared as

---

[3] Ms. Beaudoin was not, as the Defendants repeatedly claim without any support from the record, "directly behind" the tractor-trailer (ECF No. 24-1, at 4, 8). Rather, the driver's side of Ms. Beaudoin's vehicle was behind the right rear corner of the tractor-trailer. Ex. B, Aff. of Lee Beaudoin ¶¶ 2(c); *see also* Exhibit 1 to Bittner Dep.

they would roll off.  *Id.* at 47:25-48:12; Ex. B, Aff. of Lee Beaudoin ¶ 2(c).[4]  As Mr. Moore was backing up during these eleven seconds, he straightened his cab, and Ms. Beaudoin could see Mr. Moore in the cab mirror on the tractor-trailer passenger side.  Ex. B, Aff. of Lee Beaudoin ¶ 2(c); Ex. C, Beaudoin Dep. 46:8-47:18.  As a result, she tried to get Mr. Moore's attention by waving her hands and continuing to honk the horn.  Ex. C, Beaudoin Dep. 43:1-10, 44:4-8, 46:8-47:11, 46:22-25.  At the same time, Mr. Bittner was waving his hands and another motorist was honking her horn.  Ex. D, Bittner Dep 15:21-16:16.

Then, Mr. Moore stopped for approximately ten seconds.  Ex. A-2, at 9:36:01-11.  Ms. Beaudoin continued to honk the horn and wave to get Mr. Moore's attention.  Ex. C, Beaudoin Dep. 43:1-10, 44:4-8, 46:8-47:11, 46:22-25.  However, he then moved the tractor-trailer forward while Ms. Beaudoin endured the same loud crunching noise.  Ex. A-2, at 9:36:11-9:36:14; Ex. C, Beaudoin Dep. 46:22-25.  He proceeded to flee left onto Boston street, leaving Ms. Beaudoin's car totaled.  Ex. A-2, at 9:36:11-9:36:26.

Ms. Beaudoin then telephoned the police.  Ex. C, Beaudoin Dep. 23:2-24:20.  Meanwhile, Mr. Bittner chased the tractor-trailer down I-95 and subsequently gave both the tractor-trailer and cab's license plate numbers to Ms. Beaudoin.  *Id.* at 22:1-17.  Officer J. Schmitt of the Baltimore City Police later arrived at the scene, commenting that it looked like "destruction derby in the parking lot," and he put Defendants on notice of the hit-and-run that same day.  Ex. A-1, at 06:41-44.

As the case progressed through discovery, Ms. Beaudoin learned, among other things, that (1) Mr. Moore was not truthful in answering questions in his employment application regarding

---

[4] The Royal Farms employee, Ms. Cindy commented, when viewing the video, "he's on top [of Ms. Beaudoin's car].  Even these cars are shaking. You can see on the camera that they're shaking."  Ex. A-1, at 05:26-31.

his traffic violations and suspension of driving privileges; (2) that Mr. Moore was not trained by the Defendants before he began driving their tractor trailers; (3) that the Defendants did not follow proper hiring and background-check procedures; and (4) that Mr. Moore to this day refuses to take responsibility for the hit and run. *See generally* (ECF No. 15). Accordingly, Ms. Beaudoin filed a motion for leave to amend, which is currently pending with the court. (*Id.*) Importantly, for the purposes of this Opposition, Ms. Beaudoin also learned that the Defendants destroyed electronic and hardcopy versions of Mr. Moore's driver logbooks from the time of the hit-and-run. (ECF Nos. 17 and 25). The electronic versions of the logbooks were destroyed on September 3, 2017, five days after Ms. Beaudoin served Defendants with her complaint and discovery requests. *See* (ECF No. 22-2, at ¶¶ 6-11).

## II. Legal Standard.

### A. Summary Judgment Standard.

When deciding summary judgment, the Court "must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citation omitted); *see also Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004). If any material fact at issue "may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *iSky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 95 F. Supp. 3d 860, 868 (D. Md. 2015). Moreover, "[w]here the determination of what actually happened depends exclusively on an assessment of the credibility of the respective witnesses, this assessment is a disputed issue of fact and, therefore, cannot be resolved on summary judgment." *Solis v. Prince George's Cty.*, 153 F. Supp. 2d 793, 801 (D. Md. 2001) (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)); *see also Anderson*, 477 U.S. at 248-49 (summary judgment should not be granted where there is sufficient evidence "to require a jury or judge to

resolve the parties' differing versions of the truth at trial."). Accordingly, "[s]ummary judgment is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the non-moving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Alexia Burno-Whalen*, 2016 WL 1259556, at *4.

### B. Summary Judgment Standard for Intentional Torts and Punitive Damages.

As this Court has recognized, intent for intentional torts such as battery "is a subjective element usually left for the jury's determination." *Alexia Burno-Whalen*, 2016 WL 1259556, at *4 (quoting *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999)); *see also Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 662 (D. Md. 2002) ("Typically, intent is a highly fact-bound element usually left for the jury's determination."); *Cont'l Cas. Co. v. Mirabile*, 449 A.2d 1176, 1184 (Md. App. 1982) (stating that considering assault and battery claim "was an issue of credibility to be determined by the jury."). As such, "summary judgment is 'ordinarily inappropriate when intent and motive are critical to the proof of the case.'" *Rice v. Calvert Cty. Bd. of Cty. Comm'rs*, No. CV DKC 2007-1005, 2009 WL 10685346, at *4 (D. Md. Mar. 9, 2009) (quoting *Gross v. Sussex*, 332 Md. 247, 256 (1993)). As observed by the Fourth Circuit:

> Summary judgment is seldom appropriate in cases wherein particular states of mind are decisive as elements of claim or defense. See, e. g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962); Denny v. Seaboard Lacquer, Inc., 487 F.2d 485, 491 (4th Cir. 1973). This reflects a general perception that whether as a matter of fact any particular state of mind exists can seldom be considered to be beyond reasonable dispute because this depends entirely upon the conflicting inferences to be drawn from evidence so likely to be circumstantial or, if direct, self-serving.

*Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979); *see also Weir v. Litton Bionetics, Inc.*, No. CIV. H-85-2545, 1986 WL 11608, at *2 (D. Md. May 29, 1986) (stating "when the disposition of a case turns on a determination of intent, a trial court must be especially cautious

in granting summary judgment, since the resolution of that issue depends so much on the credibility of the witnesses which can best be determined by the trier of fact after observation of the demeanor of the witnesses during direct and cross-examination."); *Ferrell v. Harris Ventures, Inc.*, 812 F. Supp. 2d 741, 748 (E.D. Va. 2011) ("Questions of intent are hard to decide on summary judgment. They are almost always inferential, and best left to the trier of fact").

Similarly, because punitive damages require an assessment of whether a defendant's conduct was "characterized by evil ***motive***, ***intent*** to injure, ill will, or fraud," *Owens-Corning Fiberglas Corp. v. Garrett*, 682 A.2d 1143, 1161 (1996) (emphasis added), "[p]unitive damages are normally for the jury to decide." *Desrosiers*, 2010 WL 4116991, at *7 (citing *Garrett*, 682 A.2d at 1163) (whether the plaintiff's evidence satisfied the burden of proof on punitive damages was "solely a jury question").

**III.     Argument.**

    **A.     There is Genuine Dispute of Fact to Preclude Summary Judgment for Assault and Battery as to Whether Mr. Moore Was Aware That Ms. Beaudoin was Behind Him When He Struck Ms. Beaudoin's Vehicle or When He Continued to Reverse the Tractor-Trailer into Ms. Beaudoin's Vehicle After Making Initial Contact.**

Under Maryland law, a battery occurs "when one intends a harmful or offensive contact with another without that person's consent." *Nelson*, 735 A.2d at 1099 (Md. 1999) (citing Restatement (Second) of Torts § 13 & cmt. d (1965)). An assault is an attempt to do the same. *Continental Cas. Co. v. Mirabile*, 449 A.2d 1176, 1183 (1982). While both assault and battery require intent, this intent is not the intent by the defendant to harm the plaintiff. *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 547 (D. Md. 1997); *see also Ghassemieh v. Schafer*, 447 A.2d 84, 88 (Md. App. 1982) ("[I]ntent to do harm is not essential to a battery. ***The gist of the action is not hostile intent on the part of the defendant, but the absence of consent to the contact on the plaintiff's part.***" (emphasis added and citations omitted)); *Nelson*, 735 A.2d at 1100 n.3

("The intent with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way that the law forbids."); *Pettit v. Erie Ins. Exch.*, 699 A.2d 550, 557 (Md. App. 1997) ("If the act is done with the intention of making the offensive contact, it is immaterial that the actor is not motivated by any personal hostility or intent to injure."). A general intent to "unlawfully invade another's physical well-being through a harmful or offensive contact or an apprehension of such a contact" which may be implied will suffice. *Nelson*, 735 A.2d at 1101. The contact may be direct or indirect, and can be accomplished by "automobile or other vehicle." *Beall v. Holloway-Johnson*, 130 A.3d 406, 416-17 (2016).

Summary judgment should be denied here because there is a factual dispute as to whether Mr. Moore backed his vehicle into Ms. Beaudoin's vehicle with knowledge that Ms. Beaudoin was behind him and therefore whether Mr. Moore intended to invade Ms. Beaudoin's legally protected interests in not being hit. *See Nelson*, 735 A.2d at 1096. Indeed, the only testimony that Mr. Moore was not aware that Ms. Beaudoin was behind him comes from Mr. Moore himself. However, in viewing the evidence in a light most favorable to Ms. Beaudoin, the evidence establishes the opposite.

First, Ms. Beaudoin is adamant that Mr. Moore saw her when he backed up the tractor-trailer contrary to Defendants' unsupported argument that "she never saw the truck driver." (ECF No. 24-1, at 7). She expressed this not only at her deposition, but to the arriving officer at the scene as well as to a witness within 15-20 minutes of the hit-and-run, thus bolstering the veracity of her recollection. Ex. A-1, at 01:00-04 ("I could see his full mirror on the right side. ***I know he could see me.***"); Ex. D, Bittner Dep. 21:5-12. She also testified that she was waving to get the driver's attention. Ex. C, Beaudoin Dep. 46:22-25. If she did not think that the driver could see

11

her, it would not make sense to wave to try and get the driver's attention so that he would stop backing into her. Based on these conflicting stories alone, summary judgment is improper. *See Krider v. Marshall*, 11 F. App'x 217, 218 (4th Cir. 2001) (reversing summary judgment in favor of police officer because "the district court should not have resolved the conflicting versions of events on summary judgment"); *Charbonnages de France*, 597 F.2d at 414 (stating that the party opposing summary judgment is entitled to have his or her version of the facts accepted as true and to have all internal conflicts resolved in his or her favor); *see also Chien ex rel. Chien v. City of Sioux Falls*, 393 F. Supp. 2d 916, 922 (D.S.D. 2005) (where plaintiff brought assault claims based on defendant driver cutting off plaintiff's vehicle, court found summary judgment was improper because it was "disputed whether defendants had the intent necessary for assault" and that is was "for the jury to decide whether defendants committed assault or mere negligence" as "such factual determinations on issues of intent are best left to the jury."); *Faulk v. Vital*, 16 A.D.3d 544 (N.Y. App. Div. 2005) ("Contrary to the appellant's contention, it failed to submit evidence sufficient to establish its entitlement to judgment as a matter of law. Triable issues of fact exist as to whether the defendant driver intentionally struck the injured plaintiff . . . ." (citations omitted)).

<u>Second</u>, a third party witness corroborated Ms. Beaudoin's version of the facts. Mr. Bittner was clear that he heard honking before Mr. Moore made contact with Ms. Beaudoin's vehicle. Ex. D, Bittner Dep. 29:8-19. Mr. Bittner was also further away from Ms. Beaudoin than Mr. Moore. *Id.* A jury can reasonably infer that since Mr. Bittner heard honking and was further away from the source of the honking, Mr. Moore, whose window was open, heard the honking as well and nonetheless backed his car into Ms. Beaudoin. Mr. Bittner also testified that he was waving his hands to get Mr. Moore's attention, but that Mr. Moore did not stop. Ex. D, Bittner Dep 15:21-16:16. As such, Ms. Beaudoin was furiously waving and honking ***behind*** him and Mr. Bittner was

waving in *front* of him, and yet Mr. Moore did not stop reversing the tractor-trailer. Based on this evidence (which is not disputed by the Defendants), a jury can readily find that Mr. Moore intended to strike Ms. Beaudoin's vehicle and subsequently fled. Importantly, Mr. Bittner was himself unclear, without having the benefit of Ms. Beaudoin's version of facts that she will present at trial, as to whether this was an intentional act. *Id.* at 18:1-10 ("I was surprised to see that he did not realize or – ***or maybe he did realize***"); *id.* at 21:9-14 ("I think she said she was --;" "He was looking right at me in the mirror,"; something like that. I don't know if that's the case or not. I like to assume -- I don't want to assume, ***but I don't know if he knew it or not.***").

<u>Third</u>, here, "not only does Plaintiff dispute Defendants' allegations, the video footage does not conclusively resolve this dispute." *Walters v. Prince George's Cty.*, No. CIV.A. AW-08-711, 2010 WL 2858442, at *10 (D. Md. July 19, 2010). There are two videos of the hit-and-run, neither of which conclusively corroborate Mr. Moore's version of the facts or undermine Ms. Beaudoin's version of events. To the contrary, a reasonable jury can construe the videos, coupled with Ms. Beaudoin's and Mr. Bittner's eyewitness account of what occurred, as evidence that the contact was not, as the Defendants claim "caused by accident or inadvertence." (ECF No. 24-1, at 6); *see Alexia Burno-Whalen*, 2016 WL 1259556, at *5 (finding issue of material fact to preclude summary judgment on battery claim and malice where plaintiff's account was vastly different from the defendants' and a video of the incident confirmed some of the allegations made by the plaintiff).

In addition, the Defendants wrongfully argue that summary judgment should be granted on Ms. Beaudoin's claims of assault and battery because "Plaintiff cannot satisfy the requisite intent or her burden of proof." (ECF No. 24-1, at 7). After the jury is able to weigh the evidence, make its own findings on credibility, and observe the demeanor of the witnesses during direct and cross-

examination, the jury will be in a better position than the court on summary judgment to determine whether Ms. Beaudoin is able satisfy her burden of proof for intent. *Laws v. Thompson*, 554 A.2d 1264, 1271 (1989) ("Intent is 'peculiarly inappropriate' for decision by summary judgment because it 'can rarely be established by direct evidence, and must often be proved circumstantially and by inference." (citations omitted)).

The Defendants' reliance on *Hendrix v. Burns*, 43 A.3d 415 (2012), is misplaced. In *Hendrix*, the plaintiff was injured when the defendant ran a red light and struck the rear driver's side of Plaintiff's vehicle. *Id.* at 420. The evidence showed that on the day of the accident, the defendant was under the influence of alcohol, was involved in a "road rage" incident, and was pursuing another driver when he ran the red light and attempted to flee after striking the plaintiff's vehicle. *Id.* at 421. The plaintiff argued that because the evidence showed that the defendant had been engaged in road rage behavior immediately before the accident, this was sufficient to constitute intent or, in the alternative, under the doctrine of transferred intent, intent on the defendant's part to hit another driver. *Id.* at 423-24. The Court of Special Appeals disagreed. While noting that "[a] person can use an automobile or other vehicle to intentionally hit another person," the court determined that the defendant's conduct was characterized as reckless, but "there was no evidence in the summary judgment record to show that [the defendant] drove through the intersection with the intention of hitting [the plaintiff's] vehicle (and hence [the plaintiff]) with his Jeep." *Id.* at 428.

In this case, the facts are markedly different from *Hendrix*. As discussed above, there is ample evidence in the record to create an issue of fact as to whether Mr. Moore backed into Ms. Beaudoin's vehicle (and hence Ms. Beaudoin) with the intention of hitting her. This is based not only on Ms. Beaudoin's testimony, who unlike the plaintiff in *Hendrix*, firmly believes that Mr.

DM1\8810396.1

Moore was aware that she was behind him and proceeded to back into her despite this awareness, but also is supported by independent evidence.

This case is more similar to another case cited by the Defendants, *Beall v. Holloway-Johnson*, 130 A.3d 406, 411 (Md. 2016), where the Court of Appeals concluded that the trial court improperly granted the defense's motion for judgment on the plaintiff's battery claims. In *Beall*, a police officer struck and killed a motorcyclist after pursuing the motorcyclist for a suspicion of a crime. *Id.* at 411-12. Although the officer in *Beall* vigorously denied that he intended to strike the vehicle, the court, noting the credibility issues and conflicting statements made by the officer, determined that the plaintiff "presented legally sufficient evidence to permit a rational jury to conclude that a battery occurred on the exit ramp, which led to the collision, and was intentional." *Id.* at 417.[5]

Therefore, given the genuine dispute concerning a material fact—*i.e.*, whether Mr. Moore was aware that Ms. Beaudoin was behind him when he intentionally reversed his vehicle into her—summary judgment is inappropriate.

---

[5] While the court denied punitive damages in *Beall*, based on the fact that there was no malicious intent or evidence that the officer had a specific intent to harm the plaintiff, this case is distinguishable because viewing the evidence in a light most favorable to Ms. Beaudoin, there is a clear issue of fact as to whether Mr. Moore acted with actual malice or specific intent to harm Ms. Beaudoin. Specifically, Ms. Beaudoin testimony (corroborated by the video) shows that after Mr. Moore made initial contact with Ms. Beaudoin's vehicle, he straightened out his cab at which point she saw him. Ex. A-2, at 9:35:50-9:36:01. Despite this, he continued to back into her and crush her car four car lengths over **eleven seconds**. *Id.* From this, a jury can easily determine that the act of continuing to back into her demonstrates malicious intent or an intent to injure Ms. Beaudoin. Moreover, the hit-and-run aspect here could show "evil motive" or "ill will" on the part of Mr. Moore as can the destruction of the driver logbooks.

**B. There is a Genuine Dispute of Fact to Preclude Summary Judgment Whether Defendants' Conduct was Characterized by Evil Motive, Intent to Injure, or Ill-Will Sufficient to Entitle Ms. Beaudoin to Punitive Damages.**

Under Maryland law, "where a defendant commits a tort with 'actual malice,' a jury may award the plaintiff punitive damages. *See Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 836 (2004). "[P]unitive damages are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence." *Fisher v. McCrary Crescent City, LLC*, 972 A.2d 954, 988 (2009) (citations and internal quotations omitted). A court may award punitive damages based on actual malice, that is "conduct characterized by evil motive, intent to injure, ill will, or fraud." *Garcia v. Foulger Pratt Dev., Inc.*, 845 A.2d 16, 46 (2003) (citation omitted). Actual malice may exist if "the defendant's conduct is characterized by knowing and deliberate wrongdoing." *Darcars Motors of Silver Spring, Inc.*, 818 A.2d at 1164-65. Notably, "a finding of actual malice may be inferred from circumstantial evidence" because "[m]alice, fraud, deceit and wrongful motive are oftenest inferred from acts and circumstantial evidence. They are seldom admitted and need not be proved by direct evidence." *Garcia*, 845 A.2d at 46.

The Maryland Pattern Civil Jury Instructions specifically address the issue of punitive damages stemming from the operation of a motor vehicle and state, "[f]or punitive damages to be recoverable as a result of injuries suffered from the wrongful operation of a motor vehicle, the wrongful conduct must be characterized by evil motive, intent to injure, or ill will." *See* Md. State Bar Ass'n., *Pattern Jury Instructions*, Cv-10:20 (5th ed. 2017).

As discussed above, there is a genuine issue of material fact as to whether Mr. Moore was aware that Ms. Beaudoin was behind him when he intentionally moved the tractor-trailer into Ms. Beaudoin's vehicle. Likewise, there is a genuine dispute of material fact as to whether Mr. Moore, after making initial contact with Ms. Beaudoin's vehicle and straightening out his cab at which point Ms. Beaudoin could see him, continued to reverse into Ms. Beaudoin's vehicle for four car

lengths and eleven seconds. Certainty, this conduct would, at the very least, establish, by clear and convincing evidence, Mr. Moore's "intent to injure" Ms. Beaudoin.

In disputing Ms. Beaudoin's entitlement to punitive damages based on intentional conduct or actual malice, Defendants conclusorily assert that "nothing in the record shows intentional conduct or actual malice directed towards Plaintiff. Although Mr. Moore failed to see Plaintiff stationed ***directly behind his fully loaded trailer***, this action can only constitute negligence." (ECF No24-1, at 8 (emphasis in original)). Not only is Defendants' contention that Ms. Beaudoin was "directly behind" the tractor-trailer factually inaccurate, Ex. B, Aff. of Lee Beaudoin ¶¶ 2(c); *see also* Exhibit 1 to Bittner Dep., but Ms. Beaudoin's version of events, which is supported by independent evidence, can establish both actual malice and intentional conduct to present the issue of punitive damages to the jury. *Jordan v. Iverson Mall Ltd. P'ship*, No. GJH-14-37, 2018 WL 2391999, at *4 (D. Md. May 25, 2018) (affirming punitive damages for battery claim based on evidence that could show that defendants' conduct was either "motivated by hatred or spite" or was "solely intended to deliberately injure" the plaintiff).[6]

Moreover, evil motive, intent to injure, or ill-will sufficient for punitive damages can be established by the hit-and-run aspect of Mr. Moore's conduct. *Clark v. Torres*, 956 F.2d 263 (4th Cir. 1992) (rejecting defendant's argument that leaving the accident was not sufficiently wanton and willful to justify the giving of a punitive damages instruction); *see also Dong v. Alape*, 824

---

[6] Moreover, Ms. Beaudoin currently has pending claims for Negligent Hiring and Retention (Count IV), Negligent Supervision and Training (Count V), and Negligent Entrustment (Count VI). Punitive damages can be awarded for such claims, especially in circumstances as severe as the facts here giving rise to those claims, as set forth in more detail in Ms. Beaudoin's Motion for Leave to File First Amended Complaint and Reply thereto. (ECF Nos. 15 and 23); *Villalta v. B.K. Trucking & Warehousing, L.L.C.*, No. CV DKC 2007-1184, 2008 WL 11366412, at *6 (D. Md. Aug. 4, 2008) (finding punitive damages available based on plaintiff's allegations that "Defendants willfully disregarded others' safety when they entrusted [the driver] with one of their trucks").

A.2d 251, 260 (N.J. App. Div. 2003) (observing that hit-and-run nature of the accident "demonstrates indifference to the consequences of defendant's conduct, by leaving the injured party lying on the road, rather than stopping to lend assistance").

Accordingly, this court should deny summary judgment on Ms. Beaudoin's claim for punitive damages which "are normally for a jury to decide." *Desrosiers*, 2010 WL 4116991, at *7.

### C. The Defendants' Willful Destruction of the Logbooks Add Additional Reasons to Preclude Summary Judgment.

As set forth in detail in Ms. Beaudoin's Motion for Spoliation for the Destruction of Evidence and Reply thereto (ECF Nos. 17 and 25), the Defendants willfully destroyed driver logbooks, which would have been the only contemporaneous account by Mr. Moore of what occurred before and after the hit-and-run and, therefore, were evidence Ms. Beaudoin could have had in support of her claims. The absence of these logbooks prevents Ms. Beaudoin from challenging and contradicting the Defendants' versions of events that the Defendants claim entitle them to summary judgment. In addition, as discussed above, credibility is central to establishing Ms. Beaudoin's intentional tort claims, but the nonexistence of these logbooks severely prejudices Ms. Beaudoin's ability to prosecute those claims because she is left with the say-so of Mr. Moore and the Defendants. The Defendants should not be rewarded for their spoliation with a grant of summary judgment. *See Cumberland Ins. Grp. v. Delmarva Power*, 130 A.3d 1183, 1186-87 (Md. App. 2016) ("The doctrine of spoliation is grounded in fairness and symmetry. Stated simply, a party should not be allowed to support its claims or defenses with physical evidence that it has destroyed to the detriment of its opponent."); *Cognate BioServices, Inc. v. Smith*, No. CIV. WDQ-13-1797, 2015 WL 5158732, at *9 (D. Md. Aug. 31, 2015) (citing *Chan v. Triple 8 Palace, Inc.*, No. 03–6048, 2005 WL 1925579, at *10 (S.D.N.Y. Aug. 11, 2005) (in examining the proper

18

sanction for spoliation, noting that it may be appropriate for the court to "draw on the adverse inference when determining dispositive motions").

Moreover, with regard to punitive damages, Defendants' spoliation provides separate and independent grounds for Ms. Beaudoin's recovery of punitive damages. *See, e.g.*, *Gomez v. Cabatic*, 159 A.D.3d 62, 76, (N.Y. App. Div. 2018) (finding that lower court did not err in submitting the issue of punitive damages to the jury because "[a]llowing an award of punitive damages for a medical professional's act of altering or destroying medical records in an effort to evade potential medical malpractice liability will serve to deter medical professionals from engaging in such wrongful conduct, punish medical professionals who engage in such conduct, and express public condemnation of such conduct."); *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 325 (D. Del. 2013) (noting that the risks of having the spoliator subject to punitive damages "is likely to pale in comparison to the potential windfall that would-be spoliators could otherwise receive."); *Moskovitz v Mt. Sinai Med. Ctr.*, 635 N.E.2d 331, 343-34 (Ohio. 1994) (concluding that the act of altering or destroying records to avoid liability "is particularly deserving of punishment in the form of punitive damages and . . . a civilized society governed by rules of law can require no less" even if such destruction not directly cause compensable harm.); *see also JB Hunt v. Bentley*, 207 Ga. App. 250, 256-257 (1993) (considering the destruction of driver logbooks as evidence that punitive damages were proper). Allowing punitive damages to go to the jury under these circumstances would be entirely consistent with the purposes of spoliation sanctions. *See Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009) ("[A] proper spoliation sanction should serve both fairness and punitive functions."); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (fashioning a sanction to serve the "purpose[s] of leveling the evidentiary playing field and . . . sanctioning the improper conduct").

## CONCLUSION

For the foregoing reasons, Defendants' Partial Motion for Summary Judgment should be denied in its entirety.

Dated: June 22, 2018                     Respectfully submitted,

*/s/ Ugo Colella*
Ugo Colella (Bar No. 17443)
DUANE MORRIS LLP
505 9th Street N.W.,
Suite 1000
Washington, DC 20004-2166
ucolella@duanemorris.com
mcbrook@duanemorris.com
(202) 776-5219
(202) 315-3423 facsimile

Michael C. Brook (Bar No. 19868)
DUANE MORRIS LLP
111 South Calvert Street
Suite 2000
Baltimore, Maryland 21202-6114
mcbrook@duanemorris.com
(410) 949-2949
(410) 949-2953 facsimile

*Counsel for Lee Beaudoin*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and exact copy of the foregoing was filed electronically via the Court's CM/ECF system on this 22nd day of June, 2018 and served on all counsel of record via same.

*/s/ Ugo Colella*
Ugo Colella